1
2
3                        UNITED STATES DISTRICT COURT
4                              DISTRICT OF NEVADA
5                                    * * *
6   CATHIE KONYEN,                         Case No. 3:22-cv-00538-MMD-CLB
7                         Plaintiff,                    ORDER
        v.
8
9   LOWE'S HOME CENTERS, LLC,
10                        Defendant.

11  **I.    SUMMARY**

12          Plaintiff Cathie Konyen, appearing *pro se*,[1] alleges that her former employer,

13  Defendant Lowe's Home Centers, LLC, violated her rights under the Americans With

14  Disabilities Act of 1990, 42 U.S.C. § 12101, et seq. ("ADA") and corresponding state laws,

15  NRS §§ 613.330 and 613.340, by discriminating against her and retaliating against her

16  on the basis of her disability. Plaintiff additionally alleges Defendant breached state

17  contract law by failing its alleged promise to take care of her. (ECF No. 1.) Before the

18  Court is Defendant's motion for summary judgment and terminating sanctions (ECF No.

19  65) ("Motion")), and a related motion to strike (ECF No. 71) ("Motion to Strike"))[2] portions

20  of Plaintiff's response to Defendant's Motion (ECF No. 70).

21          As further explained below, the Court will grant the Motion. Defendant is entitled

22  to terminating sanctions given Plaintiff's attempt to willfully deceive the Court and disrupt

23
24
25  _____

26  [1]Plaintiff was represented by counsel when she initiated this action. Counsel
    moved to withdraw on May 6, 2024, citing "a breakdown in the attorney-client
    relationship." (ECF No. 44 at 4.) The Court granted the motion to withdraw on June 3,
27  2024. (ECF No. 49.) Plaintiff subsequently sought and was denied appointment of pro
    bono counsel (ECF Nos. 58, 62), and now appears before the Court *pro se*.
28
            [2]The Court has reviewed the responses and replies relating to these motions. (ECF
    Nos. 70, 72, 73, 74.)

1   the administration of justice. In the alternative, the Court also finds Defendant is entitled

2   to summary judgment on all claims. The Court thus will deny the Motion to Strike as moot.

3   **II.    RELEVANT BACKGROUND[3]**

4          The Parties disagree as to precise dates but agree that Plaintiff was employed by

5   Defendant and held various positions in Defendant's stores located in Reno, Nevada, San

6   Jose, California, and Newburgh, New York, over a period spanning at least thirteen years.

7   (ECF Nos. 1 at 1, 65 at 9-14.) Plaintiff's employment with Defendant concluded in June

8   2019. (ECF Nos. 1 at 3-4, 65 at 14.)

9          Plaintiff worked in Defendant's Reno store as an Installed Sales Coordinator from

10  March 2014 to January 2016. (ECF Nos. 1 at 6, 65 at 9.) In April 2015, Plaintiff

11  experienced back pain and sought treatment from Dr. Bruce Witmer at the Reno

12  Orthopedic Clinic ("ROC") on June 22, 2015. (*Id.*) Dr. Witmer outlined "temporary"

13  workplace restrictions for Plaintiff that would need re-evaluation after four weeks. (ECF

14  No. 65 at 9.) He also completed Defendant's internal medical accommodations form with

15  third-party claims administrator, Reed Group, indicating that Plaintiff had the following

16  restrictions for the four-week period: "no standing, walking, pushing, pulling, carrying,

17  squatting, stooping, kneeling, climbing, crawling, lifting—restricted to sedentary." (ECF

18  No. 66 at 144.) Defendant subsequently granted these temporary accommodations. (ECF

19  No. 66 at 146.) Plaintiff had additional appointments with Dr. Witmer in July, August, and

20  October 2015 and again received temporary work restrictions. (ECF No. 70 at 57-59.)

21         In January 2016, Plaintiff's husband, Gary Konyen ("Gary"), who was also

22  employed by Defendant, was transferred to Defendant's East San Jose, California store.

23  (ECF No. 65 at 9.) Plaintiff and Gary moved to San Jose, and Plaintiff was hired as an

24  Installed Sales Coordinator in Defendant's South San Jose store. (*Id.*) In February 2016,

25  Plaintiff sought medical care in San Jose and saw Dr. James Nguyen of Kaiser

26  Permanente's Spine Clinic, who noted that Plaintiff "[d]enies trauma or inciting event."

27

28         [3]The following facts are undisputed unless otherwise noted.

(ECF Nos. 65 at 9-10, 66 at 153).[4] Plaintiff completed accommodations paperwork and received accommodations from Defendant in 2016. (ECF No. 70 at 119-126; *see also* ECF No. 1 at 2.) She received accommodations from Defendant lasting one year in the San Jose store. (ECF No. 70 at 153.)

In April 2018, Plaintiff moved with her husband to New York, and Plaintiff was hired as an Appliance Sales Specialist at Defendant's Newburg, New York store. (ECF No. 65 at 10.) Plaintiff sought accommodations again, claiming to receive care from a clinic called Chiro Wellness located on Dolson Avenue. (ECF Nos. 65 at 10, 66 at 161.) On September 20, 2018, Defendant received a faxed internal accommodation request form that noted Plaintiff's impairments as "lumbar chronic lower back & arthritis bone on bone grinding," stated Plaintiff "must be off by 4:00P.M. to attend physical therapy and pain management classes," and listed lifetime limitations for the following activities: bending, lifting, reaching, standing, and pulling. (ECF No. 66 at 174-176.) The form was signed by Dr. Jeffrey Spina. (*Id.* at 178.) The following day, on September 21, 2018, Defendant received a similar faxed accommodation request form with slightly different restrictions, signed by a Dr. David Spina,[5] bearing a stamp from Chiro-Care on Dolson Avenue. (*Id.* at 180-184.) Defendant granted Plaintiff workplace accommodations from at least December 2018 through April 11, 2019. (ECF No. 70 at 342.)

In March 2019, Plaintiff and Gary moved back to Reno and Plaintiff was hired as a Flooring Sales Specialist at Defendant's Reno store. (ECF No. 65 at 10-11.) Shortly after assuming this position, in April 2019, Plaintiff called Defendant's third-party accommodations administrator, now Sedgwick, to inform them that the store seemed unaware of her accommodations and requested to extend her accommodations. (*Id.*) On

---

[4]Defendant's Motion indicates that Plaintiff asked Dr. Nguyen to fill out a new ADA Accommodation form, citing to Exhibit 13, but Exhibit 13 shows no such request. However, the Court notes that Plaintiff submitted evidence of such a request accompanying her response to Plaintiff's motion. (ECF No. 70 at 112.)

[5]Forms were signed by different doctors who both have the last name Spina. Plaintiff testified in her deposition that Chiro Wellness was family owned and there was "a lot of family there." (ECF No. 66 at 160.)

April 10, 2019, Defendant's Disability, Leaves and Accommodations Service Center sent Plaintiff a letter instructing her to have her medical provider complete and fax an internal Accommodation Substantiation Form. (ECF No. 66 at 228-29.) On April 17, 2019, Sedgwick then contacted Defendant's Reno Store Manager, David Berntzen ("Berntzen"), to inform him of Plaintiff's prior accommodations from her old store and ask if the new store could accommodate her. (*Id.* at 235.)

On April 19, 2019, Defendant received a faxed Accommodation Substantiation Form bearing a signature purportedly from Dr. Bruce Witmer of ROC ("Dr. Witmer"). (*Id.* at 221-24.) The fax was sent from Gary's employer, HD Supply. (ECF Nos. 66 at 221-24, 65 at 11.) The form stated that Plaintiff had permanent restrictions of "no pushing, no power equipment, must be off by 5pm for therapy, no bending, no usage of 10 foot ladders or higher, patient can lift up to 10 lbs." (ECF No. 66 at 221). Defendant's employees required more information regarding Plaintiff's accommodations and Sedgwick requested her to submit a second form with information about her restrictions. (ECF No. 65 at 12.) On May 1, 2019, Defendant received a second faxed Accommodation Substantiation Form with similar restrictions, also from Gary's employer, bearing a signature purportedly from Dr. Witmer. (*Id.*) The two Accommodation Substantiation Forms (collectively, "2019 Accommodation Forms") listed different email addresses purportedly belonging to Dr. Witmer in the Medical Provider Information section. (*Id.*)

After receiving the 2019 Accommodation Forms, Defendant's employees reviewed Plaintiff's restrictions and the Flooring Sales Specialist position requirements and determined that Plaintiff would be unable to do half of the key responsibilities of the position and that Defendant would be unable to meet Plaintiff's scheduling needs. (*Id.* at 12-13.) On May 7, 2019, Defendant's employees discussed and determined that they could not accommodate Plaintiff's restrictions in the Flooring Sales Specialist role, but that they could meet her accommodations in a Customer Service Associate position at self-checkout. (*Id.* at 13.) Defendant offered Plaintiff that position that same day. (*Id.*) The following day, Defendant's employees agreed that Plaintiff's restrictions could also be

4

1    accommodated in the Installed Sales Coordinator role. (*Id.* at 14.) Defendant then offered

2    Plaintiff this position, in addition to the Customer Service Associate position. (*Id.*) Both

3    positions paid less than the Flooring Sales Specialist position, and Plaintiff declined to

4    take the position at a decrease in pay. (ECF Nos. 1 at 11, 65 at 14.) Defendant gave

5    Plaintiff until May 24, 2019, to decide whether she would take a position or go on paid,

6    short-term disability leave. (ECF No. 65 at 14.)

7         The parties dispute how Plaintiff's employment ended with Defendant, but the facts

8    are undisputed that when Plaintiff had failed to decide by May 29, 2019, Defendant placed

9    her on a leave of absence. (*Id.*) Then, on June 6, 2019, Plaintiff sent an email to

10   Berntzen that stated, "David I am emailing you to inform of my two weeks notice to Lowe's

11   Of Reno as Flooring Specialist My two weeks ends June 20th Cathie Konyen." (ECF Nos.

12   65 at 14, 67 at 48) On June 21, 2019, Plaintiff began a new position at a different

13   company. (*Id.*) She applied for this position while she was still employed at Defendant

14   and when she had not yet been placed on leave. (*Id.*)

15        Plaintiff dual-filed a charge of discrimination (the "Charge") with the Equal

16   Employment Opportunity Commission and the Nevada Equal Rights Commission on

17   February 3, 2020. (ECF No. 67 at 54-57.) The Charge states that Plaintiff believes

18   Defendant violated her rights under the ADA in May 2019 by rescinding her

19   accommodations and retaliating against her. (*Id.*)

20        Plaintiff filed this case in December 2022. (ECF No. 1.) In her Complaint, she

21   alleges three categories of claims: (1) disability discrimination in violation of the ADA and

22   state law, (2) retaliation in violation of the ADA and state law, and (3) a breach of state

23   contract law.

24   **III.    DISCUSSION**

25        Defendant moves for terminating sanctions and summary judgment as to each of

26   Plaintiff's claims. The Court first addresses the request for terminating sanctions, and

27   then the request for summary judgment as to each claim, in turn, below.

28

### A.    Terminating Sanctions

Defendant argues that terminating sanctions are appropriate because Plaintiff submitted fraudulent medical records that are "the foundation for her alleged need for an accommodation" that "form[s] the basis for her EEOC Charge, and are the impetus for her claims before this Court." (ECF No. 65 at 18.) Plaintiff does not specifically respond to Defendant's evidence that Plaintiff submitted forged medical documents, but counters that Defendant incentivized Dr. Witmer's testimony by paying expert witness fees (ECF No. 70 at 7) and asserts that Defendant has engaged in libelous and slanderous denial of Plaintiff's disability (*id.* at 9). The Court agrees with Defendant.

When a party has engaged deliberately in deceptive practices that undermine the integrity of judicial proceedings, dismissal is an available sanction because "courts have inherent power to dismiss an action when a party has willfully deceived the court and engaged in conduct utterly inconsistent with the orderly administration of justice." *See Leon v. IDX Sys. Corp.*, 464 F.3d 951, 958 (9th Cir. 2006) (citing *Anheuser-Busch, Inc. v. Nat. Beverage Distributors*, 69 F.3d 337, 348 (9th Cir. 1995)). A finding of "willfulness, fault, or bad faith" is required for dismissal to be proper. *Id.* Furthermore, due process limits the imposition of the severe sanctions of dismissal or default to "extreme circumstances" in which "the deception relates to the matters in controversy[.]" *Fjelstad v. Am. Honda Motor Co.*, 762 F.2d 1334, 1338 (9th Cir. 1985) (*citing Wyle v. R.J. Reynolds Industries, Inc.,* 709 F.2d 585, 589 (9th Cir.1983)).

This is such an extreme circumstance. The Court finds ample evidence that Plaintiff attempted to willfully deceive the Court by relying upon forged 2019 Accommodation Forms to establish her disability and right to accommodations for the EEOC Charge underlying this litigation. Defendant has pointed to evidence obtained during discovery that indicates that Plaintiff's husband Gary forged the 2019 Accommodation forms, and that Plaintiff knew about this forgery:

- Deposition testimony from Dr. Witmer of ROC stating that the 2019 Accommodation Forms were not signed by him, nor anyone in his office,

6

1    and that no one was authorized to sign medical forms on his behalf (ECF
2    No. 66 at 11-19);

3    •    Analysis from a handwriting expert determining that Plaintiff's husband,
4    Gary, was "unquestionably the author" of the 2019 Accommodation Forms
5    (*id.* at 22-26);

6    •    Information on the 2019 Accommodations Forms that shows that the forms
7    were faxed from Gary's employer, HD Supply White Cap (ECF Nos. 66 at
8    221-24, 67 at 11-15);

9    •    Deposition testimony from Gary, in which he invoked the Fifth Amendment
10    and refused to answer any deposition questions (ECF No. 67 at 92-94);

11    •    Deposition testimony from Plaintiff in which Plaintiff states repeatedly states
12    that she had not "seen" her husband forge these documents (ECF No. 66
13    at 158).

14    Plaintiff has failed to respond to the overwhelming evidence that the 2019
15    Accommodations Forms were forged. In responding to Defendant's argument that Dr.
16    Witmer said the forms allegedly signed by him were fraudulent, Plaintiff argues that Dr.
17    Witmer is "mistaken," citing to previously undisclosed evidence that does not support her
18    claim. (ECF No. 70 at 8.) Plaintiff has furnished no evidence to support her claim that she
19    was a patient of ROC in 2019. Moreover, Plaintiff has made no attempt to correct the
20    record or withdraw the 2019 Accommodation Forms.

21    The Court finds that Plaintiff knowingly submitted fraudulent documentation to
22    Defendant in 2019, and this documentation is the basis for her EEOC Charge and the
23    claims in her Complaint. Plaintiff's deception is thus central to the matters in controversy
24    and it is "conduct utterly inconsistent with the orderly administration of justice." *Fjelstad*,
25    762 F.2d at 1338. Accordingly, the Court finds that Plaintiff has engaged in willful
26    deception and bad faith conduct.

27    Before imposing dismissal as a sanction, the district court must consider five
28    factors: "(1) the public's interest in expeditious resolution of litigation; (2) the court's need

to manage its dockets; (3) the risk of prejudice to the party seeking sanctions; (4) the public policy favoring disposition of cases on their merits; and (5) the availability of less drastic sanctions." *Anheuser-Busch, Inc.* 69 F.3d at 348. This five-factor test "provides the district court with a way to think about what to do, not a set of conditions precedent for sanctions[.]" *Connecticut Gen. Life Ins. Co. v. New Images of Beverly Hills*, 482 F.3d 1091, 1096 (9th Cir. 2007).

The first factor, the public's interest in expeditious resolution, weighs in favor of dismissal. Plaintiff filed her EEOC Charge over four years ago. (ECF No. 67 at 54-57.) The documentation underlying Plaintiff's discrimination claim is the fraudulent paperwork Plaintiff submitted to Defendant, and the same fraudulent paperwork has resulted in years of unnecessary litigation before the Court. The Court finds that the public interest would be benefitted by the efficient resolution of this case.

The second factor weighs in favor of dismissal. As discussed above, the Court has expended judicial resources on this litigation that could have been devoted to other legitimate cases on its docket.

The third factor weighs strongly in favor of dismissal. Defendant has offered plentiful evidence that shows that Plaintiff's 2019 Accommodation Forms were forged by Plaintiff's husband. Plaintiff has not responded in any substantive way to this argument, nor has she attempted with withdraw or correct these fraudulent forms. "'A defendant suffers prejudice if the plaintiff's actions impair the defendant's ability to go to trial or threaten to interfere with the rightful decision of the case.'" *In re Phenylpropanolamine (PPA) Prods. Liab. Litig.*, 460 F.3d 1217, 1227 (9th Cir. 2006) (quoting *Adriana Int'l Corp.*, 913 F.2d 1406, 1412 (9th Cir. 1990)). Here, Plaintiff has submitted forged medical documents and withheld relevant documents during discovery. (ECF No. 71.) In light of this conduct, the Court agrees with Defendant that Defendant would be prejudiced if the case proceeded to trial.

The Court acknowledges that public policy favors the disposition of cases on their merits, which weighs against the entry of dismissal sanctions. However, this factor alone

1  "is not sufficient to outweigh the other factors." *Leon v. IDX Sys. Corp., 464 F.3d 959, 961*

2  (9th Cir. 2006) (quoting *Malone v. U.S. Postal Serv.*, 833 F.2d 128 (9th Cir. 1987)). The

3  other four factors in this test weigh in favor of dismissal.

4        Lastly, the fifth factor weighs in favor of dismissal. As Defendant argues, Plaintiff

5  has proceeded *pro se* since her counsel withdrew representation. (ECF Nos. 49, 65 at

6  25.) Plaintiff is unlikely to have the ability to pay money sanctions. Moreover, where a

7  party has engaged in a pattern of deception, "'[i]t is appropriate to reject lesser sanctions

8  where the court anticipates continued deceptive misconduct.'" *Conn. Gen. Life Ins. Co.*,

9  482 F.3d at 1097 (quoting *Anheuser-Busch, Inc.*, 69 F.3d at 352). The Court has

10  considered lesser sanctions, and ultimately finds that lesser sanctions would be

11  unavailing, given Plaintiff's fraud and failure to address the record.

12        In sum, given the overwhelming evidence that Plaintiff's 2019 Accommodation

13  Forms were forged by Plaintiff's husband Gary and that Plaintiff has failed to respond

14  substantively to Defendant's arguments, the Court finds that Plaintiff has attempted to

15  willfully deceive the court. The Court further finds that terminating sanctions are proper.

16        **B.    Summary Judgment**

17        Defendant moves for summary judgment on each of Plaintiff's claims. The Court

18  finds that in addition to terminating sanctions, Defendant is entitled to summary

19  judgement as to all claims. The Court addresses the Motion as to each claim below.

20        **1.    Disability Discrimination Claims**

21        Plaintiff alleges violations of federal and state laws[6] based on discrimination due

22  to her disability. (ECF No. 1 at 16, 22.) Defendant argues it is entitled to summary

23  judgment on all of Plaintiff's disability discrimination claims because Plaintiff cannot

24

25

26        [6]Because the language of NRS § 613.310 et seq. is almost identical to the
language of the ADA, federal courts in Nevada look to federal cases for guidance in
27  applying the Nevada statute. *See Hirschhorn v. Sizzler Restaurants Int'l, Inc.*, 913 F.
Supp. 1393, 1398 (D. Nev. 1995) (citing *Apeceche v. White Pine County*, 615 P.2d 975,
28  977 (Nev. 1980); *see also Pope v. Motel 6*, 114 P.3d 277, 280 (Nev. 2005).

1    establish the elements to make out a *prima facie* case of discrimination under the ADA.

2    (ECF No. 65 at 28-32.)

3        To state a *prima facie* case of disability discrimination under the ADA, Plaintiff must

4    allege facts that plausibly show: (1) she is a disabled person within the meaning of the

5    [ADA]; (2) she is a qualified individual with a disability; and (3) she suffered an adverse

6    employment action because of her disability." *Samper v. Providence St. Vincent Med.*

7    *Ctr.*, 675 F.3d 1233, 1237 (9th Cir. 2012) (citation and internal punctuation omitted). The

8    Court finds that Plaintiff cannot establish the second and third prong.[7]

9        With respect to the second prong, the ADA defines "qualified individuals" as those

10   "who, with or without reasonable accommodation, can perform the essential functions of

11   the employment position that such individual holds." 42 U.S.C. § 12111(8). If an employer

12   has prepared a written description before advertising or interviewing applicants, "this

13   description shall be considered evidence of the essential functions of the job." *Id.* The

14   employee bears the burden of proving she is qualified. *See Dark v. Curry Cnty.*, 451 F.3d

15   1078, 1086 (9th Cir. 2006).

16       The Court finds that Plaintiff has not met this burden. Plaintiff argues that she was

17   able to perform customer service, sales and sales related tasks of the Flooring Sales

18   Specialist position, and that other functions of the position should be considered

19   secondary. (ECF No. 70 at 13.) However, the job description for the Flooring Sales

20   Specialist position provided that the candidate must operate store equipment, pull and

21   stage freight/products, move freight delivery, pull product from top stock to down stock

22   shelves, and required "morning, afternoon, and evening availability any day of the week."

23   (ECF No. 67 at 21-24.) Plaintiff's lifetime restrictions laid out in the 2019 Accommodation

24   Forms indicate that Plaintiff could not lift or push more than 10 pounds, operate power

25   equipment, or use ladders higher than 10 feet. (ECF No. 65 at 30.) Plaintiff also needed

26   to be off by 5 pm each weekday. (*Id.*) Plaintiff has not introduced a genuine issue of

27

28       [7]The parties do not dispute that Plaintiff has a disability.

1  material fact by asserting that various essential functions of this position should simply be

2  deemed secondary. Accordingly, the Court finds that there is no genuine dispute of

3  material fact as to whether Plaintiff was a qualified individual for the Flooring Sales

4  Specialist position.

5          With respect to the third prong, Defendant argues that Plaintiff has not suffered an

6  adverse employment action because Plaintiff resigned. (ECF No. 65 at 31.) The facts are

7  undisputed that Plaintiff resigned from employment with Defendant via email in June

8  2019. (ECF Nos. 67 at 48; 1 at 13.) Plaintiff has provided no evidence to support her

9  claims that she submitted notice "solely for purposes of obtaining her accrued vacation

10 and sick leave pay, but not to effect a permanent or voluntary separation of employment

11 from [Defendant]." (ECF No. 1 at 3.) Nor has Plaintiff submitted evidence to show that

12 she had "historically filed" such administrative notices before. (*Id.*) On the contrary, the

13 undisputed facts show that Plaintiff submitted two weeks of notice to Defendant to

14 effectuate termination, because Plaintiff began a new job the day after her notice period

15 ended. (ECF No. 65 at 14.) The Court thus finds no genuine issue of material fact as to

16 whether Plaintiff resigned from Defendant's employ.

17         Plaintiff additionally argues that she was constructively discharged because she

18 was offered two options: a demotion to one of two positions at lesser pay, or short-term

19 disability leave, from which she could not return because her restrictions were permanent.

20 (ECF No. 1 at 2.) Defendant argues, citing to *Turner v. Anheuser-Busch, Inc*, 876 P.2d

21 1022 (Cal. 1994), that Plaintiff's theory of constructive discharge fails because she must

22 prove by a preponderance of evidence that the employee's resignation was coerced.

23 (ECF No. 65 at 31-32.) The Ninth Circuit, and courts in this district, have similarly held

24 that constructive discharge occurs only when work conditions become "sufficiently

25 extraordinary and egregious." *Brooks v. City of San Mateo*, 229 F.3d 917, 930 (9th Cir.

26 2000); *see also Long v. Diamond Dolls of Nevada, LLC*, No. 319CV00652LRHCLB, 2020

27 WL 6381673, at *6 (D. Nev. Oct. 29, 2020). Plaintiff alleges that she was constructively

28 discharged because Defendant offered Plaintiff two different positions and the option of

paid leave. These circumstances are not sufficiently extraordinary and egregious to amount to constructive discharge. The Court thus finds that Plaintiff suffered no adverse employment action because there is no genuine issue of material fact that Plaintiff voluntarily resigned, nor was Plaintiff constructively discharged.

Additionally, Plaintiff claims that Defendant failed its duty to engage in the interactive process in good faith as required by the ADA and state law. (ECF No. 1 at 16-17). Once an employee requests an accommodation, the employer must engage in an interactive process with the employee, which requires "(1) direct communication between the employer and employee to explore in good faith the possible accommodations; (2) consideration of the employee's request, and (3) offering an accommodation that is reasonable and effective." *Zivkovic v. S. California Edison Co.*, 302 F.3d 1080, 1089 (9th Cir. 2002).

Here, Defendant argues that its "extensive communications" between Plaintiff, Defendant's third-party claims administrators Sedgwick and Reed Group, and Defendant's employees shows that it engaged in the interactive process in good faith. (ECF No. 65 at 33.) While Defendant exaggerates—Plaintiff's past communications with Reed Group are irrelevant to the communications that occurred when she sought to extend her accommodations in 2019—the Court finds sufficient evidence that Defendant communicated directly with Plaintiff and in good faith. Plaintiff communicated her needs directly to and Sedgwick and Berntzen, and Defendant's employees discussed in good faith possible accommodations for Plaintiff. (ECF No. 67 at 7, 9, 26, 28.) Defendant also offered Plaintiff reasonable accommodations: two vacant positions to which they could reassign Plaintiff and a leave of absence. (ECF No. 65 at 33-34.) The Court agrees. An employer is obligated to provide reasonable accommodation, but it is not obligated to provide an employee the accommodation she requests or prefers. *Zivkovic*, 302 F.3d 1089.

In sum, because Plaintiff is not a qualified individual and did not suffer an adverse employment action, the Court agrees with Defendant that Plaintiff cannot make a *prima*

*facie* case of discrimination under the ADA and the accompanying state law. Moreover, Defendant did not fail its obligation to engage in the interactive process in good faith. Accordingly, the Court grants Defendant's Motion as to Plaintiff's disability discrimination claims.

### 2.    Retaliation Claims

Defendant argues that it is entitled to summary judgment as to Plaintiff's ADA and state law retaliation claims[8] because Plaintiff cannot make out a *prima facie* case of retaliation. (ECF No. 65 at 34.) To make a *prima facie* case of retaliation under the ADA, Plaintiff must show that (1) she engaged in a protected activity; (2) she suffered an adverse employment outcome; and (3) that there was a causal link between the protected activity and the adverse employment outcome. *Pardi v. Kaiser Found. Hosps.*, 389 F.3d 840, 849 (9th Cir. 2004). "Pursuing one's rights under the ADA constitutes a protected activity" and an adverse employment action is any action "reasonably likely to deter employees from engaging in protected activity." *Id.* at 850. Defendant argues that Plaintiff was not subject to an adverse employment action and cannot establish a causal link between any protected activity and any adverse employment action.

Regarding the second prong, Defendant argues that it is unclear what Plaintiff alleges was an adverse employment action. (ECF No. 65 at 34.) Defendant argues that to the extent Plaintiff argues her separation with Defendant was an adverse employment action, Plaintiff's claim fails because she resigned, and to the extent Plaintiff argues that she should have been permitted to remain a Flooring Sales Specialist, her claim necessarily fails because there is no basis for retaliation. (*Id.* at 34-35.) Based on the allegations in the Complaint, Plaintiff alleges that she was subject to the following adverse employment actions: removal from the Flooring Sales Specialist position, offer of two alternate positions at lesser pay or short-term disability leave, Defendant's failure to consider the same accommodations it had historically provided, being placed on paid

---

[8]Nevada courts look to federal courts for guidance in discrimination cases. *See Pope*, 114 P.3d 277 at 280.

1  leave after Plaintiff filed her internal appeal, and being required to return with a full medical
2  release. (ECF No. 1 at 10-14.)

3      The Court agrees with Defendant that Plaintiff has not suffered an adverse
4  employment action. Plaintiff's resignation from the Flooring Sales Specialist position and
5  refusal of a reasonable accommodation does not constitute an adverse employment
6  action, *see supra*. Remaining is Plaintiff's allegation that Defendant's refusal to accept
7  accommodations she had historically received at other of Defendant's stores is an
8  adverse employment action. As discussed *supra*, an employer need only offer reasonable
9  accommodation, not Plaintiff's preferred accommodation. Thus, Plaintiff's claim that she
10 suffered an adverse employment action because Defendant did not offer the same
11 accommodations that she had received in a different store in a different state also fails.

12      Regarding the third prong, Defendant argues that Plaintiff cannot establish a
13 causal link between any protected activity and any adverse employment action. Because
14 the Court finds that there has been no adverse employment action, the Court necessarily
15 agrees.

16      Accordingly, the Court grants Defendant's Motion as to Plaintiff's retaliation claims.

17      **3.    Breach of Contract Claims**

18      Defendant argues that it is entitled to summary judgment as to Plaintiff's state law
19 breach of contract claims stemming from Defendant's alleged promise to "take care of"
20 Plaintiff. (ECF No. 65 at 36.) The Court agrees.

21      An enforceable contract requires offer and acceptance, meeting of the minds, and
22 consideration. *May v. Anderson*, 119 P.3d 1254, 1257 (Nev. 2005). Defendant argues
23 that Plaintiff can point to no evidence that there was an oral contract. (ECF No. 65 at 36.)
24 While Defendant is incorrect insofar as Plaintiff testified in her deposition that one of
25 Defendant's employees promised to "take care of" her (ECF No. 66 at 103-05), "[a] valid
26 contract cannot exist when material terms are lacking or are insufficiently certain and
27 definite." *May*, 119 P.3d at 1257. Plaintiff's allegation that Defendant promised to "take
28 care of" her is not sufficiently definite. Plaintiff additionally argues that "she had planned

to work for [Defendant] into the foreseeable future," (ECF No. 70 at 18), but this is also insufficient to show that a contract was formed.

Lastly, Defendant argues that there can be no consideration for an existing duty to which the promisor is obliged, and that if Defendant made any promise, it was to reasonably accommodate Plaintiff, which it had a pre-existing duty to do under the ADA. (ECF No. 65 at 37.) Defendant misconstrues Plaintiff's claim. Plaintiff alleges that she did not file a worker's compensation claim in exchange for Defendant granting all her requested accommodations, beyond what is required of the ADA and state law. (ECF Nos. 1 at 1-2; 66 at 102-05.) Regardless, the Court finds that Plaintiff has not raised any genuine issues of material fact as to whether a contract was formed.

On summary judgment, the moving party bears the burden of informing the district court of the basis for its motion and identifying the portions it believes demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Defendant has met this burden by noting the absence of any evidence that would indicate that the elements of contract formation have been met.  Accordingly, the Court grants Defendant's Motion as to Plaintiff's contract claim.

## IV.    CONCLUSION

The Court notes that the parties made several arguments and cited to several cases not discussed above. The Court has reviewed these arguments and cases and determines that they do not warrant discussion as they do not affect the outcome of the motions before the Court.

It is therefore ordered that Defendant's motion for terminating sanctions and summary judgment (ECF No. 65) is granted as to terminating sanctions, and summary judgment is granted in the alternative.

It is further ordered that Defendant's motion to strike (ECF No. 70) is denied as moot.

It is further ordered that the Clerk of Court enter judgment in favor of Defendant in accordance with this order and close this case.

DATED THIS 25th Day of July 2025.

MIRANDA M. DU
UNITED STATES DISTRICT JUDGE

16